STATE OF CONNECTICUT *v.* IRVING NIXON
(14866)

PETERS, C. J., and CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued September 28, 1994—decision released January 3, 1995

*Donald C. Mahoney,* certified legal intern, with whom were *Timothy H. Everett* and, on the brief, *Scott E. Perry,* certified legal intern, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, was *Patricia Swords*, state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Irving Nixon, was convicted after a jury trial of all five counts of an information charging him with conspiracy to commit assault of an employee of the department of correction, accessory to assault of an employee of the department of correction,[1] conspiracy to commit assault in the second degree, accessory to assault in the second degree[2] and rioting at a correctional institution. The trial court sentenced the defendant to ten years each on counts one, two and five and to five years on count four. All sentences were to run concurrently with the ten year sentence imposed on count one.[3] The effective ten year

---

[1] General Statutes (Rev. to 1991) § 53a-167c provides in relevant part: "(a) A person is guilty of assault of a[n] . . . employee of the department of correction when, with intent to prevent a reasonably identifiable . . . employee of the department of correction from performing his duty, and while such . . . employee is acting in the performance of his duties, (1) he causes physical injury to such . . . employee . . . .

"(b) Assault of a[n] . . . employee of the department of correction is a class C felony. If any person who is confined in an institution or facility of the department of correction is sentenced to a term of imprisonment for assault of an employee of the department of correction under this section, such term shall run consecutively to the term for which the person was serving at the time of the assault."

General Statutes (Rev. to 1991) § 53a-8 provides: "CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for the commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[2] General Statutes (Rev. to 1991) § 53a-60 provides in relevant part: "A person is guilty of assault in the second degree when . . . (5) he is in the custody of the commissioner of correction, confined in any institution or facility of the department of correction, or is a parolee from a correctional institution and with intent to cause physical injury to an employee of the department of correction or an employee or member of the board of parole, he causes physical injury to such employee or member."

[3] The trial court set aside the verdict as to the third count, conspiracy to commit assault in the second degree.

sentence was to run consecutively to a sentence that the defendant was serving at the time of the assaults.

The defendant appealed from the trial court's judgment to the Appellate Court. In his appeal, he raised seven claims of error. The Appellate Court affirmed the trial court's judgment. *State* v. *Nixon*, 32 Conn. App. 224, 630 A.2d 74 (1993). We granted the defendant's petition for certification, limited to the following issue: "Under the circumstances of this case, did the Appellate Court properly conclude that the defendant's convictions, as an accessory, of assault in the second degree in violation of General Statutes § 53a-60 (a) (5), and of assault o[f] a correctional officer in violation of General Statutes § 53a-167c (a) (1) did not violate the defendant's federal double jeopardy rights?" *State* v. *Nixon*, 228 Conn. 910, 635 A.2d 1229 (1993). We affirm the judgment of the Appellate Court.

The Appellate Court determined that the jury reasonably could have found the following facts. "The defendant was incarcerated in the segregation unit of the Somers correctional institution. On the morning of January 11, 1991, correction employees Moses Williams, John Pearson, Stewart Felton and Michael Rutkowski were on duty when the defendant returned to his cell unit.

"When he reentered the segregation unit, the defendant proceeded to cell number seventy-eight where another inmate, Francis Anderson, was incarcerated. Anderson was a particularly dangerous inmate. While correction employees were attempting to cuff Anderson's hands behind his back and shackle his feet, the defendant yelled 'pop seventy-eight,' a term used to request a correction employee to open a cell. In response, a prison employee mistakenly heeded the defendant's request. Anderson emerged from the cell unrestrained and proceeded toward a staircase. He ignored repeated orders to return to his cell.

"Pearson sought to restrain the defendant, but the defendant was unwilling to cooperate and obey orders. Pearson was concerned that the defendant posed a greater threat than did Anderson. As the defendant began to walk away, he asked Anderson to assault a correction employee in exchange for $200 in cash. Anderson agreed and punched Pearson in the jaw. Anderson tried to strike Pearson again while several other employees attempted to restrain him. In the course of the scuffle, Anderson threw Williams from his back and struck Rutkowski. As a result of Anderson's punch, Rutkowski sustained an injury to his forehead. Finally, with the help of the defendant, the officers regained control of Anderson and returned him to his cell." *State* v. *Nixon*, supra, 32 Conn. App. 227–28.

The defendant argues that his sentences for his convictions of assault of a correction officer, as an accessory, in violation of §§ 53a-167c (a) (1) and 53a-8 and assault in the second degree, as an accessory, in violation of §§ 53a-60 (a) (5) and 53a-8 violate his double jeopardy rights because, in this case, they constitute dual punishment for the same offense. We disagree.

The double jeopardy clause of the fifth amendment to the United States constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause [applies] to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *State* v. *Greco*, 216 Conn. 282, 289, 579 A.2d 84 (1990); *State* v. *Lonergan*, 213 Conn. 74, 78, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990). This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. *Brown* v. *Ohio*, 432 U.S. 161,

165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *State* v. *Anderson,* 212 Conn. 31, 35, 561 A.2d 897 (1989); *State* v. *John,* 210 Conn. 652, 693, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989)." *State* v. *Greco,* supra, 289–90. Although the Connecticut constitution does not include a double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution encompasses protection against double jeopardy. *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962); see also *State* v. *Anderson,* 211 Conn. 18, 25 n.8, 557 A.2d 917 (1989).[4]

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Greco,* supra, 216 Conn. 290–91. There is no dispute in this case that the crimes with which the defendant was charged, of which he was convicted and to which he was sentenced arose out of the same transaction. Thus, the sole issue is whether they constitute the same offense.

Traditionally we have applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States,* 284 U.S. 299,

[4] Because the defendant has not, however, presented a separate analysis of his double jeopardy claim under the state constitution, we confine our analysis to the application of the federal constitution's double jeopardy bar. See, e.g., *State* v. *DePastino,* 228 Conn. 552, 571, 638 A.2d 578 (1994).

304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). "This test is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial." *State* v. *Lonergan*, supra, 213 Conn. 79. Thus, we must examine the language of §§ 53a-60 (a) (5) and 53a-167c (a) (1), as well as the long form information filed in this case,[5] to determine if, as the defendant was charged, there was any element that the state was required to prove under one statute that was different from an element under the other.

Section 53a-60 (a) (5), assault in the second degree, requires the state to prove that a person, while in the custody of the commissioner of correction and confined to any institution or facility of the department of correction, "with intent to cause physical injury to an employee of the department of correction . . . causes physical injury" to such employee. Section 53a-167c (a) (1), assault of an employee of the department of correction, requires the state to prove that a person "with intent to prevent a reasonably identifiable . . . employee of the department of correction from performing his duty, and while such . . . employee is acting in the performance of his duties . . . causes physical injury to such . . . employee." The long form information with which the defendant was charged essentially duplicated this language.[6] The statute and

---

[5] In determining whether there was a double jeopardy violation, not only do we look to the language of the statutes, but we also look to "the information, and the bill of particulars, [but] not the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Greco*, supra, 216 Conn. 291. The language used to charge the defendant in the information, therefore, is relevant to this inquiry, although the actual evidence presented at trial is not.

[6] Count two of the information charging the defendant stated in relevant part: "[W]ith intent to prevent an employee of the Department of Corrections from performing his duty and while such employee was acting in the performance of his duties, [the defendant] solicited, requested, and importuned Francis Anderson to assault an employee of the Department of Cor-

information on each charge, therefore, require proof of elements that the statute and information on the other charge do not. The most significant of these differences involves the defendant's *intent*.

To prove assault in the second degree under § 53a-60 (a) (5), the state must have proven that the defendant, while in the custody of the commissioner of correction and confined to a correction facility, intended to cause physical injury to an employee of the department of correction. To prove assault of an employee of the department of correction pursuant to § 53a-167c (a) (1), however, the state must have proven that the defendant intended to prevent a correction officer from performing his duty and that he thereby caused physical injury to the employee. The intent element in each statute consequently "requires proof of a fact which the other does not." *Blockburger* v. *United States*, supra, 284 U.S. 304. The defendant concedes that, if he had been charged as a principal with violating §§ 53a-60 (a) (5) and 53a-167c (a) (1), the state would have been required by each statute to prove at least one element not required by the other statute.

The defendant argues, however, that in this case assault in the second degree, pursuant to § 53a-60 (a) (5), is a lesser included offense of assault of a correction officer, pursuant to § 53a-167c (a) (1), because the defendant, having been charged as an accessory, could not have committed the latter offense without necessarily having committed the former. The defendant

rections. As a result of said actions by the defendant, Francis Anderson assaulted Corrections Officers John Pearson and Michael Rutkowski causing physical injury." Count four alleged in relevant part: "[W]ith intent to cause physical injury to an employee of the Department of Corrections, [the defendant] solicited, requested, and importuned Francis Anderson to assault an employee of the Department of Corrections. As a result of said actions by the defendant, Francis Anderson assaulted Corrections Officers John Pearson and Michael Rutkowski causing physical injury."

asserts that he could be convicted as an accessory to assault in the second degree in violation of § 53a-60 (a) (5) only if he encouraged Anderson to act, with the intent that Anderson cause physical injury. The defendant further asserts that he could be convicted as an accessory to assault of an employee of the department of correction in violation of § 53a-167c (a) (1) only if he encouraged Anderson to act, with the intent *both* that Anderson cause physical injury and that Anderson prevent a correction officer from performing his duties. Therefore, the defendant avers, accessory to assault in the second degree is a lesser included offense of accessory to assault of an employee of the department of correction. We are not persuaded.

For double jeopardy purposes, a lesser included offense and the greater offense are considered to be one offense. *Brown* v. *Ohio*, supra, 432 U.S. 168; *State* v. *Goldson*, 178 Conn. 422, 425, 423 A.2d 114 (1979). "The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense, in the manner described in the information . . . without having first committed the lesser." (Internal quotation marks omitted.) *State* v. *Goldson*, supra, 426; see also *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). "The point is that if [assault on a correction officer] does not always entail proof of [assault in the second degree], then the two offenses are not the 'same' under the *Blockburger* test. The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the [less serious offense] to establish an element of [the more serious offense] would not be sufficient to bar the latter prosecution [on double jeopardy grounds]." *Illinois* v. *Vitale*, 447 U.S. 410, 419, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980).

Contrary to the defendant's argument, it is possible for a defendant, even when charged as an accessory,

to commit an assault of a correction officer, pursuant to § 53a-167c (a) (1), without committing an assault in the second degree, pursuant to § 53a-60 (a) (5). The defendant's intent to prevent a correction officer from performing his duty in violation of § 53a-167c (a) (1) does not necessarily lead to the conclusion that the defendant also intended to cause physical injury to the correction officer in violation of § 53a-60 (a) (5). It is possible, therefore, for a person to commit what the defendant claims is a greater offense without committing what he claims is a lesser included offense.

Section 53a-8[7] requires that a defendant charged as an accessory have acted "with the mental state required for commission of [the] offense." An accessory, therefore, must only have the same intent as the principal. Furthermore, "accessorial liability does not require that a defendant act with the conscious objective to cause the result described by the statute. . . . [Section] 53a-8 merely requires that a defendant have the mental state required for the commission of a crime while intentionally aiding another." *State* v. *Foster*, 202 Conn. 520, 529–31, 522 A.2d 277 (1987). In this case, therefore, the defendant could be convicted as an accessory to assault in the second degree if he had the mental state required of a principal (i.e., if he had intent to injure), and if he "solicit[ed], request[ed], command[ed], importune[d] or intentionally aid[ed]" the principal to engage in the conduct (i.e., if he solicited Anderson to strike Pearson). Similarly, the defendant could be convicted as an accessory to assault of an employee of the department of correction if he had the mental state required of a principal (i.e., if he had intent to prevent the performance of duties), and if he solicited, requested, commanded, importuned or intentionally aided the principal to engage in the conduct (i.e., if he solicited Anderson to strike Pearson).

[7] See footnote 1.

Because the different intent required under each statute leads us to conclude that § 53a-60 (a) (5) is not a lesser included offense of § 53a-167c (a) (1) under the *Blockburger* test in the case of a principal, we reach the same conclusion where the defendant has been charged as an accessory.

Our analysis, however, does not end here. "[T]he *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Garrett* v. *United States*, 471 U.S. 773, 779, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985); see also *Whalen* v. *United States*, 445 U.S. 684, 691–92, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980); *State* v. *Greco*, supra, 216 Conn. 292. "The *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent. *Albernaz* v. *United States*, [450 U.S. 333, 340, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981)]; *Beam* v. *Foltz*, 832 F.2d 1401, 1411 (6th Cir. 1987), cert. denied, 485 U.S. 980, 108 S. Ct. 1278, 99 L. Ed. 2d 489 (1988). The language, structure and legislative history of a statute can provide evidence of this intent." (Internal quotation marks omitted.) *State* v. *Greco*, supra, 293. If the legislature clearly expressed an intention that the statutes were designed to punish the same offense, then prosecution under both statutes would violate the double jeopardy clause.

The defendant maintains that the legislative history as manifested by the evolution of §§ 53a-60 and 53a-167c indicates that the legislature intended that the two statutes be considered the same offense for double jeopardy purposes. We are unpersuaded.

In 1969, the General Assembly enacted General Statutes § 53-16a; Public Acts 1969, No. 144, § 1; the precursor to the present § 53a-60, which provided in rele-

vant part: "Any person committed to the commissioner of correction . . . who commits an assault . . . shall, if the person assaulted is an employee of the department of correction . . . be imprisoned for not more than five years." Section 53-16a was repealed and was replaced in 1971 by § 53a-60.[8] Public Acts 1971, No. 871, § 129. A violation of General Statutes (Sup. 1971) § 53a-60 (a) was a class D felony. That subsection had two relevant subdivisions, (3) and (6), pursuant to which a defendant could receive a maximum five year sentence.[9] Subdivision (3) prohibited injuring a peace officer with intent to prevent him from performing his duties, and subdivision (6) prohibited an inmate from causing physical injury to any employee of the department of correction with intent to cause such injury. Peace officer was defined as, among other things, any official of the department of correction authorized to make an arrest in a correction facility. General Statutes (Sup. 1971) § 53a-3 (9). The mental states required by those subdivisions mirror those now found in §§ 53a-167c (a) (1) and 53a-60 (a) (5).

In 1973, the legislature moved the language of § 53a-60 (a) (3) to a new section, § 53a-167c (a) (1). Public Acts 1973, No. 73-639, § 20. General Statutes (Rev. to 1975) § 53a-167c (a) (1) contained language identi-

---

[8] General Statutes (Sup. 1971) § 53a-60 provided in relevant part: "(a) A person is guilty of assault in the second degree when . . . (3) with intent to prevent a reasonably identifiable peace officer or fireman from performing his duty, he causes physical injury to such peace officer or fireman . . . or (6) he is committed to the custody of the commissioner of correction . . . and with intent to cause physical injury to an employee of the department of correction . . . he causes physical injury to such employee . . . ." "Peace officer" was defined to include "an official of the department of correction authorized by the commissioner of correction to make arrests in a correctional institution or facility." General Statutes (Sup. 1971) § 53a-3 (9).

[9] General Statutes (Sup. 1971) § 53a-60 (b) provided: "Assault in the second degree is a class D felony." A class D felony is punished by "a term not to exceed five years." General Statutes (Sup. 1971) § 53a-35 (b) (4).

cal to that previously contained in General Statutes (Sup. 1971) § 53a-60 (a) (3), except that assault of a peace officer was raised to a class C felony, making the maximum penalty ten years.[10] Thus, in 1973 the legislature moved subdivision (3) of § 53a-60 (a) to § 53a-167c, leaving its language intact.[11]

In 1990, the legislature did not amend § 53a-60 (a) (5). The legislature did, however, revise § 53a-167c to include "employee of the department of correction" in addition to "peace officer." Public Acts 1990, No. 90-250, § 2. Additionally, the legislature added the last sentence of the statute, which provides: "If any person who is confined in an institution or facility of the department of correction is sentenced to a term of imprisonment for assault of an employee of the department of correction under this section, such term shall run consecutively to the term for which the person was serving at the time of the assault." General Statutes § 53a-167c (b). If the person committed the assault while already confined, therefore, the statute mandated that any sentence imposed must run consecutively to the term that was being served at the time of the assault. The expressed intent of the 1990 revision was "to discourage those who would assault correctional employees. . . ." 33 H.R. Proc., Pt. 13, 1990 Sess., p. 4350, remarks of Representative William Kiner.

The defendant argues that when the legislature amended § 53a-167c in 1990 to punish assaults of all employees of the department of correction and to make prison terms for violations of the statute run consecutively, it intended to collapse §§ 53a-60 (a) (5) and

[10] General Statutes (Rev. to 1975) § 53a-35 (b) (3) defines the punishment "for a class C felony, [as] a term not to exceed ten years."

[11] Because subdivision (3) had been moved out of § 53a-60 (a), subdivision (6) of § 53a-60 (a) became subdivision (5). Other than the movement of subdivisions, and the deletion of former subdivision (3), however, the language of § 53a-60 (a) remained the same.

53a-167c (a) (1) into one offense. The defendant points to two facts to support his argument. First, he cites Representative Kiner's introductory remarks regarding the 1990 amendment to § 53a-167c where he stated: "What the amendment would do would make an assault upon an employee of the Corrections Department a Class C felony. Currently it's a Class D felony . . . the amendment does one other thing and that is it makes the penalty run consecutively rather than concurrently." 33 H.R. Proc., Pt. 13, 1990 Sess., pp. 4348–49. The defendant argues that at the time of these remarks, § 53a-60 (a) (5) "was the only statute on the books dealing with assault on a correction employee and it was a class D felony," so Representative Kiner must have believed that § 53a-60 (a) (5) was to be superseded by the amended § 53a-167c. Second, the defendant asserts that the legislature explicitly clarified the intent of the 1990 amendment when, in 1993, it deleted the words "an employee of the department of correction" from § 53a-60 (a) (5), leaving § 53a-167c as the only statute that punished assaults on such individuals. See Public Acts 1993, No. 93-246, § 3 (P.A. 93-246). We are not persuaded that these two facts clearly demonstrate that, at the time that the defendant engaged in this conduct and was charged, the legislature intended to treat the conduct punished by the two statutes as a single offense.

First, Representative Kiner's statement is not a clear indication of legislative understanding that both statutes punished the same offense. Representative Kiner never addressed the different intent requirements of the two statutes. It appears that Representative Kiner may have misunderstood the relationship between § 53a-60 (a) (5) and § 53a-167c, as, even before 1990, certain assaults of employees of the department of correction were *both* class D *and* class C felonies. Although § 53a-167c (a) (1) previously punished assaults only on "peace officer[s]" and § 53a-60 (a) (5) previously pun-

ished assaults only of "employee[s] of the department of correction," some assault victims would have fallen into both categories. See General Statutes § 53a-3 (9).[12] There is no evidence that other legislators shared Representative Kiner's misperceptions; cf. *Frillici* v. *Westport*, 231 Conn. 418, 650 A.2d 557 (1994); or that they intended to supersede § 53a-60 (a) (5).

The defendant's argument, in essence, is that in 1990 when the legislature amended § 53a-167c to punish assaults of all employees of the department of correction, it simply *forgot* to delete § 53a-60 (a) (5). When the legislature acts, however, it is presumed to know the state of the law. *State* v. *Dabkowski*, 199 Conn. 193, 201, 506 A.2d 118 (1986). Moreover, it is not the province of the court to do what the legislature chose not to do. *In re Petition of State's Attorney, Cook County, Illinois*, 179 Conn. 102, 107, 425 A.2d 588 (1979). The defendant nevertheless attempts to bolster his argument by citing legislative action in 1993 regarding these statutes. He claims that, in 1993 the legislature retrospectively removed reference to employees of the department of correction from § 53a-60 (a) (5) in order to correct its previous oversight. See Public Acts 1993, No. 93-246, § 3. The defendant's reliance on the legislative history of P.A. 93-246 to support his position, however, is not convincing.

In referring to the removal of employees of the department of correction from subdivision (5) of § 53a-60 (a), Representative Michael Lawlor remarked that it "deletes reference under the penalty or the definition of assault [in the] second degree which is a class D felony which is a lower form of felony which did include an assault on an employee of the Depart-

---

[12] General Statutes § 53a-3 (9) provides in part: " 'Peace officer' means . . . an official of the department of correction authorized by the commissioner of correction to make arrests in a correctional institution or facility . . . ."

ment of Corrections, and since we have instituted the new crime of assault in the first degree on an employee of the Department of Corrections and the additional language under the Class C felony of assault on an employee of the Department of Corrections, this seems somewhat inconsistent with our intent which is to increase the penalties for assault on corrections officers in our state." 36 H.R. Proc., Pt. 25, 1993 Sess., pp. 8949–50. The defendant relies on the second half of this conjunctive sentence to argue that the legislature only intended to apply a single operative statute, § 53a-167c (a) (1), a class C felony, to assaults on correction officers involving physical injury, as opposed to serious physical injury, and that this intention was retroactive to 1991 when the defendant was arrested. We disagree.

Although we have on occasion and under particularly compelling circumstances inferred earlier legislative intent from the legislative history of a subsequent legislature; see, e.g., *In re Valerie D.*, 223 Conn. 492, 523–24, 613 A.2d 748 (1992); "the views of a subsequent [legislature] form a hazardous basis for inferring the intent of an earlier one." *United States* v. *Philadelphia National Bank*, 374 U.S. 321, 348–49, 83 S. Ct. 1715, 10 L. Ed. 2d 915 (1963), citing *United States* v. *Price,* 361 U.S. 304, 313, 80 S. Ct. 326, 4 L. Ed. 2d 334 (1960). We cannot glean the intent of the 1990 legislature from the sparse language in the 1993 legislative history to conclude that in 1990 the legislature intended that §§ 53a-60 (a) (5) and 53a-167c (a) (1) were to be the same offense for double jeopardy purposes.

There is, moreover, no indication that the legislature intended the 1993 revision of § 53a-60 to clarify a preexisting legislative intent; rather, "[w]e recognize the usual presumption that, in enacting a statute, the legislature intended a change in existing law." *State* v. *Magnano*, 204 Conn. 259, 277, 528 A.2d 760 (1987). A

clarifying act "in effect construes and clarifies a prior statute [and] must be accepted as the legislative declaration of the meaning of the original act." *Tax Commissioner* v. *Estate of Bissell*, 173 Conn. 232, 246, 377 A.2d 305 (1977); *State* v. *Blasko*, 202 Conn. 541, 559, 522 A.2d 753 (1987); see *State* v. *One 1977 Buick Automobile*, 196 Conn. 471, 479, 493 A.2d 874 (1985); *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 540, 489 A.2d 363 (1985); *Neyland* v. *Board of Education*, 195 Conn. 174, 180, 487 A.2d 181 (1985); *Lee* v. *Board of Education*, 181 Conn. 69, 75, 434 A.2d 333 (1980). Here there is no indication, either from the language of P.A. 93-246 or its legislative history, that the legislature intended it to be a clarifying act. We must presume that in 1993, the legislature simply made a policy decision to change the existing law by removing employees of the department of correction from § 53a-60 (a) (5). See *State* v. *Magnano*, supra, 277. Further, there is no clear indication that the legislature made this change because it perceived a potential double jeopardy violation in its previous enactments. The apparent intent of the legislature in 1993, was not to merge the class D felony of § 53a-60 (a) (5) into the class C felony of § 53a-167c (a) (1), but instead to make the class D felony of § 53a-60 (a) (5) the basis of a *new* class *B* felony.[13] In the absence of a *clear* indication

[13] Although in the 1993 revision the legislature removed correction officers from the statute under which the defendant here was convicted, the legislature made assault in the first degree, a class B felony, specifically applicable to employees of the department of correction. Section 2 of P.A. 93-246 provides in relevant part: "(a) A person is guilty of assault of an employee of the department of correction in the first degree when he is in the custody of the commissioner of correction or confined in any institution or facility of the department of correction and commits assault in the first degree under section 53a-59 of the general statutes and the victim of such assault is an employee of the department of correction acting in the performance of his duties. . . .

"(c) Assault of an employee of the department of correction in the first degree is a class B felony. If any person is sentenced to a term of imprisonment for a violation of this section which occurred while such person was

of contrary legislative intent, the result under the *Block-burger* analysis is controlling. *State* v. *Greco*, supra, 216 Conn. 293.

Additionally, we note that under §§ 53a-60 (a) (5) and 53a-167c (a) (1), assault of an employee or member of the board of parole is treated the same as assault of a correction officer was treated in 1991, when this defendant was charged. If, as the defendant argues, the legislature in 1993 was correcting an error by repealing all references to employees of the department of correction from § 53a-60 in order to avoid a double jeopardy problem, we must ask why it would allow a defendant charged with assault of an employee or member of the board of parole to be in the same peril of facing a double jeopardy violation by adding, in 1993, employees or members of the board of parole to § 53a-167c (a) (1) while leaving those employees in § 53a-60 (a) (5). If we are to presume that the legislature meant to cure a problem in §§ 53a-60 and 53a-167c, then we must also presume that it intentionally created the same defect for assaults of employees or members of the parole board. These presumptions, when juxtaposed, are illogical and cannot stand.

Finally, § 2 of P.A. 93-246 provides: "(b) No person shall be found guilty of assault in the

confined in an institution or facility of the department of correction, such term of imprisonment shall run consecutively to the term for which the person was serving at the time of the assault." Although assault in the first degree has different elements from assault in the second degree, § 53a-60, Representative Lawlor, in discussing P.A. 93-246, remarked that there had been several recent incidents of violence in Connecticut prisons and that "all of that conduct at least as far as I can tell from the accounts of that would constitute assault of a corrections officer in the first degree . . . ." 36 H.R. Proc., Pt. 25, 1993 Sess., p. 8950; see also id., pp. 8949–50 (arguing that § 53a-60 [a] [5] is no longer necessary, in part, "since we have instituted the new crime of assault in the first degree on an employee of the Department of Corrections"). This statement may be indicative of the reasoning behind the change instituted by P.A. 93-246. In any event, none of the legislative history indicates that the revision was meant to clarify an expressed intent.

first degree and assault of an employee of the department of correction in the first degree upon the same incident of assault but such person may be charged and prosecuted for both such offenses upon the same information." "Since the legislature has shown that it knows how to bar multiple punishments expressly when it does not intend such punishment, the absence of similar language in [§§ 53a-60 and 53a-167c] provides evidence that the legislature intended cumulative punishment. See *In re Ralph M.*, 211 Conn. 289, 306, 559 A.2d 179 (1989); *Plourde* v. *Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054 (1988)." *State* v. *Greco*, supra, 216 Conn. 295. In summary, the defendant has not shown a clear legislative intent that in 1991, when this offense was committed, violations of §§ 53a-60 (a) (5) and 53a-167c (a) (1) were not to be punished cumulatively.

Because there is no clear legislative intent to the contrary, the result under the *Blockburger* test is controlling. Under that test, we conclude that there was no double jeopardy violation when the defendant was sentenced for violation of both §§ 53a-60 (a) (5) and 53a-167c (a) (1).

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

