STATE OF CONNECTICUT *v.* ANTHONY JONES
(AC 24020)

Flynn, Bishop and McDonald, Js.*

* The listing of judges reflects their status on this court as of the date of oral argument.

Argued January 5—officially released July 25, 2006

*Gary A. Mastronardi*, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John P. Doyle, Jr.*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Anthony Jones, appeals from the judgment of conviction, rendered after a jury

trial, of attempted assault of a peace officer in violation of General Statutes §§ 53a-167c (a) (1)[1] and 53a-49 (a), and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38. On appeal, he claims that (1) attempted assault of a peace officer is not a cognizable offense under Connecticut law, (2) there was insufficient evidence to establish attempted assault of a peace officer, (3) the trial court abused its discretion in permitting the state to open its case, after the defendant rested, to offer additional evidence of possession of a weapon in a motor vehicle and (4) the failure of defense counsel to move for acquittal on the basis of a lack of evidence of a pistol permit constituted ineffective assistance of counsel. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 2 a.m. on March 27, 2000, Officers Edwin DeJesus and Michael Ortiz of the New Haven police department were dispatched in two marked cars to Clinton Avenue Park in New Haven to investigate a report of a fight. As the officers approached the park, they observed a group of people run and enter a maroon Toyota Camry and drive off at a high rate of speed toward Maltby Street. The officers also observed two males, one of whom was later identified as the defendant, quickly run to and enter a Chevrolet Caprice, which was parked adjacent to the park. DeJesus drove his vehicle in front of the Caprice to prevent it from being driven away, and he activated the overhead lights on his police cruiser. As DeJesus activated his cruiser lights, Ortiz approached the

[1] General Statutes § 53a-167c (a) provides in relevant part: "A person is guilty of assault of public safety or emergency medical personnel when, with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties, (1) such person causes physical injury to such peace officer . . . ."

Caprice from behind and also activated his overhead cruiser lights.

As Ortiz approached, the defendant put his car in reverse and sped directly toward Ortiz' vehicle. Ortiz put his car in reverse and backed onto Clinton Avenue to avoid a collision. After barely missing a collision with Ortiz' vehicle, the defendant then spun his vehicle into the middle of Clinton Avenue and drove down Clinton Avenue toward Grand Avenue. Both officers pursued the defendant, with Ortiz in the lead. DeJesus activated his vehicle's siren.

Clinton Avenue ends at Grand Avenue. The defendant crossed Grand Avenue and entered the parking lot of a senior residence at 50 Grand Avenue with Ortiz following close behind. DeJesus entered the parking lot from the other end in an effort to block the defendant's only path of egress. The defendant continued at a high rate of speed toward DeJesus, causing DeJesus to make a sharp left turn onto a ramp for the handicapped, almost striking the building. DeJesus testified that, had he not taken this evasive maneuver, the defendant would have struck his car.

As the defendant left the parking lot, he turned his vehicle right and proceeded along Grand Avenue, then to East Grand Avenue, with both officers still in pursuit. At the intersection of East Grand Avenue and Russell Street, the defendant lost control of his vehicle, which came to rest in the driveway of a nearby house. Ortiz drove in behind the defendant's car, and DeJesus drove in on the left side of the car. As the officers approached the defendant's vehicle, both occupants exited the car and began to flee on foot. DeJesus apprehended the passenger. The defendant, with Ortiz in pursuit, ran around the house, jumped over a fence, ran back to the car, put it in reverse and sped back along East Grand Avenue. Ultimately, the defendant lost control of his

vehicle, and, after backing it into a building, he was apprehended by the police.

At the time the defendant was apprehended, the officers found two Ruger .357 magnum pistols in the vehicle he had been driving, one located on the floor behind the driver's seat, and the other on the floor behind the front passenger's seat.

The defendant was charged with two separate counts of attempted assault of a peace officer in violation of §§ 53a-167c (a) (1) and 53a-49 (a), and one count of possession of a weapon in a motor vehicle in violation of § 29-38. After a jury trial, the defendant was convicted of one count of attempted assault of a peace officer and possession of a weapon in a motor vehicle, and he was given a total effective sentence of fourteen years incarceration. This appeal followed.

I

The defendant first asserts that the crime of attempted assault of a peace officer does not exist under Connecticut law. Specifically, the defendant claims that because the very essence of a criminal attempt is the defendant's intention to cause the proscribed result, it follows that there can be no crime of attempted assault of a peace officer because one cannot attempt to cause an unintended act. The defendant misconstrues the statute.

A person is guilty of assault of a peace officer in violation of § 53a-167c (a) when "with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties, (1) such person causes physical injury to such peace officer . . . ." "It is plain from a reading of General Statutes § 53a-49 (a) that the intent required for attempt liability is the intent required for the commission of the

substantive crime." (Internal quotation marks omitted.) *State* v. *Zollo*, 36 Conn. App. 718, 734, 654 A.2d 359, cert. denied, 234 Conn. 906, 660 A.2d 859 (1995).[2] The criminal result must be the conscious object of the actor's conduct. The requisite intent for assault of a peace officer is the intent to prevent the peace officer from performing his duties rather than the intent to cause the resulting injury. "Intent to cause physical injury is not a prerequisite to culpability under this statute." *State* v. *Nixon*, 32 Conn. App. 224, 237, 630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995). The intent portion of the statute in question relates, then, to the intent to impede a police officer and not to the harm that results from such interference. Thus, one may be culpable under the statute if one attempts to impede, regardless of whether one intends the consequence of injury to a police officer.

In sum, we conclude that when coupled with the attempt statute, the intent required for the crime of attempted assault of a peace officer is the intent to prevent the officer from performing his duties. Under § 53a-167c, one may be held liable for assault of a peace officer whether the injury is intended or not. See *State* v. *Nixon*, 231 Conn. 545, 552–54, 651 A.2d 1264 (1995). Because there is no mens rea element regarding the injury, which distinguishes this case from those relied on by the defendant, there is no inconsistency between the elements of the underlying crime and the intent to prevent the officer from performing his duties required by the criminal attempt statute.[3]

---

[2] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] The Supreme Court of Washington has similarly rejected the claim that an attempt charge for crimes that lack a mens rea element is legally inconsis-

In support of his contention that the crime of attempted assault of a peace officer is not a cognizable crime in Connecticut, the defendant cites cases that support the proposition that it is a logical impossibility either to attempt or to conspire to achieve an unintentional or reckless result. See *State* v. *Almeda*, 189 Conn. 303, 309, 455 A.2d 1326 (1983) (attempt to commit manslaughter does not exist under Connecticut law because it is not possible to have specific intent to commit an unintentional killing), on appeal after remand, 196 Conn. 507, 493 A.2d 890 (1985); *State* v. *Beccia*, 199 Conn. 1, 4, 505 A.2d 683 (1986) (conspiracy to commit arson in third degree not cognizable because arson requires reckless mental state).[4] The defendant's reliance on these cases, however, is inapposite because the underlying crimes in those cases either have dual intent requirements, the intent to engage in the proscribed conduct *and* the intent to cause a specific result, or, by their language, the harm resulting from the proscribed behavior must be unintentional. Neither is so in the present case. Accordingly, the defendant's claim that the crime of attempted assault of a peace officer is not cognizable in Connecticut must fail.

## II

The defendant next claims that he could not have been convicted of attempted assault of a peace officer because there was no evidence of injury to DeJesus. We disagree.

tent. See *State* v. *Chhom*, 128 Wash. 2d 739, 743, 911 P.2d 1014 (1996) (en banc).

[4] The defendant also relies on *People* v. *Campbell*, 72 N.Y.2d 602, 605, 532 N.E.2d 86, 535 N.Y.S.2d 580 (1988), in which the New York Court of Appeals held that there is no offense of attempt to commit assault in the second degree under a subsection of the New York assault statutes similar to General Statutes § 53a-167c. The court interpreted the absence of a mens rea requirement for the injury to be equivalent to a statutory requirement that the injury be unintended. *People* v. *Campbell*, supra, 606. As noted, our Supreme Court has not interpreted § 53a-167c similarly. See *State* v. *Nixon*, supra, 231 Conn. 552-54.

"An attempt of a crime is accomplished when a person intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . . The defendant also must have possessed the specific intent to commit the underlying crime. An attempt is an inchoate crime, meaning that it is unfinished or begun with the proper intent but not finished." (Citation omitted; internal quotation marks omitted.) *State* v. *Flowers*, 85 Conn. App. 681, 707, 858 A.2d 827 (2004), rev'd on other grounds, 278 Conn. 533, 898 A.2d 789 (2006). "[T]he attempt is complete and punishable, when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption . . . or for other extrinsic cause." (Internal quotation marks omitted.) *State* v. *Torres*, 47 Conn. App. 205, 220, 703 A.2d 1164 (1997).

To establish the defendant's culpability for the crime of attempted assault of a peace officer, the state needed to prove only that the defendant attempted to injure DeJesus with the intent to prevent him from performing his duty. The fact that the defendant did not accomplish the result, the injury to the officer, speaks to the essence of the *attempt* charge. Because the state was not required to prove that the officer incurred an actual injury, the defendant's claim fails.

### III

Next, the defendant claims that the court abused its discretion in allowing the state to open its case, after the defendant rested his case, to offer additional evidence regarding the charge of possession of a weapon in a motor vehicle. We are not persuaded.

The following additional facts are pertinent to the defendant's claim. As part of the state's case-in-chief,

DeJesus testified that he had determined that neither the defendant nor his passenger had a pistol permit. On October 15, 2002, the state rested its case, after which the defendant moved for a judgment of acquittal on all counts. As to the possession of a weapon in a motor vehicle count, he claimed that the state had failed to prove that he knew that a weapon was in the car. He did not, however, challenge the adequacy of the state's evidence regarding whether he had a permit for the weapon. The court denied the motion for acquittal.

After the defense rested its case, the state moved to open the evidence to present two witnesses to testify that the defendant did not have a pistol permit from the city of New Haven or the state of Connecticut. The prosecutor stated that he had planned to call the witnesses in his initial presentation of evidence but had inadvertently failed to do so. The defendant objected to the motion to open, arguing that he would be prejudiced if the state were permitted to establish an essential element of the offense once the state had rested its case-in-chief. During argument on this point, defense counsel acknowledged that one officer had testified that there were no pistol permits relating to the defendant and that, for this reason, he had not included the absence of evidence of permits as a basis for his motion for a judgment of acquittal. Nevertheless, defense counsel argued that the proposed testimony would bolster the testimony that had already been adduced, prejudicially highlighting it to the jury. The court granted the state's motion to open the evidence to offer the testimony of two additional witnesses. Thereafter, Officer Kenneth Blanchard testified that neither the defendant nor his passenger had pistol permits in New Haven, and Sergeant Timothy Osika testified that neither the defendant nor his passenger had state permits.[5]

---

[5] In denying the motion for a judgment of acquittal, the court stated: "Then having reviewed the evidence from the testimony that the monitor—the reporter was able to read back and looking at the case law and statute,

"The decision to open a criminal case to add further testimony lies within the sound discretion of the court, which should be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The purpose . . . is to preserve the fundamental integrity of the trial's truth-finding function." (Internal quotation marks omitted.) *State* v. *Meikle*, 60 Conn. App. 802, 817, 761 A.2d 247 (2000), cert. denied, 255 Conn. 947, 769 A.2d 63 (2001). "Unless the state's offer seeks to fill an evidentiary gap in its prima facie case that was specifically called to the state's attention by the defendant's motion for acquittal; see *State* v. *Allen*, [205 Conn. 370, 385, 533 A.2d 559 (1987)]; the trial court may permit additional evidence to be presented even though that evidence strengthens the case against the defendant." *State* v. *Roman*, 224 Conn. 63, 71, 616 A.2d 266 (1992), cert. denied, 507 U.S. 1039, 113 S. Ct. 1868, 123 L. Ed. 2d 488 (1993). "In determining whether the court abused its discretion, we must make every reasonable presumption in favor of its action." *State* v. *Lowe*, 61 Conn. App. 291, 303, 763 A.2d 680 (2001).

In the present case, the state presented testimony in its case-in-chief that the defendant had no permits. The evidence proffered on the opening of the state's case was cumulative, although more specific. In permitting the state to open the evidence for this limited purpose, the court properly exercised its discretion. We will reverse a trial court's exercise of its discretion only on a showing of manifest abuse of discretion or injustice. *State* v. *Dunbar*, 51 Conn. App. 313, 319, 721 A.2d 1229

although it's an extremely close call, the court is going to exercise its discretion. I don't see substantial prejudice to the defendant in allowing the state to present the necessary witnesses regarding the permits. And I should make it perfectly clear that this was not an evidentiary gap, that was raised by the defense or pointed out by the defense and, after having looked at *State* v. *Allen*, 205 Conn. 370, 533 A 2d 559 (1987), and *State* v. *Nelson*, 17 Conn. App. 556, 555 A.2d 426 (1989), the court is going to exercise its discretion and allow the state to put on those witnesses."

(1998), cert. denied, 247 Conn. 962, 724 A.2d 1126 (1999). In this instance, the defendant has failed to sustain his burden of demonstrating that the court abused its discretion in granting the state's motion to open.

## IV

Finally, the defendant claims that trial counsel's failure to move for a judgment of acquittal on the charge of possession of a weapon in a motor vehicle on the basis that there was insufficient evidence to establish that the defendant lacked a permit constituted ineffective assistance of counsel.

"Almost without exception, we have required that a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . Absent the evidentiary hearing available in the collateral action, review in this court of the ineffective assistance claim is at best difficult and sometimes impossible. The evidentiary hearing provides the trial court with the evidence which is often necessary to evaluate the competency of the defense and the harmfulness of any incompetency. . . . [O]n the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal . . . we have limited our review to situations in which the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development." (Citation omitted; internal quotation marks omitted.) *State* v. *Greene*, 274 Conn. 134, 151–52, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006).

The defendant claims that his ineffective assistance of counsel claim can be addressed on direct appeal because the record adequately reflects defense counsel's incompetence. Specifically, the defendant argues

that no competent defense attorney familiar with the elements of the offense of possession of a weapon in a motor vehicle would have failed to make the appropriate motion for acquittal on the appropriate ground. The defendant contends that the record is complete in this regard and that the fact-finding role of the habeas court is not necessary to conclude that he was denied the effective assistance of counsel. We disagree.

"The transcript of the proceedings in the trial court allows us to examine the *actions* of defense counsel but not the underlying *reasons* for his actions." (Emphasis in original; internal quotation marks omitted.) *State* v. *Tirado*, 194 Conn. 89, 92, 478 A.2d 606 (1984). "Our role . . . is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. Without a hearing in which the reasons for counsel's decision may be elicited, any decision of ours . . . would be entirely speculative." *State* v. *Chairamonte*, 189 Conn. 61, 64, 454 A.2d 272 (1983).

In the present matter, the record reveals only that defense counsel opted not to challenge the adequacy of the state's evidence regarding the lack of a permit because there was testimony from DeJesus stating that he had conducted a check that revealed that the defendant did not have a permit. The record does not reveal any other reasons for defense counsel's actions. The reasons for defense counsel's decisions and actions are questions of fact that cannot be resolved without an evidentiary hearing. Accordingly, we decline to review the defendant's claim and leave the defendant to relief by way of a petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion FLYNN, J., concurred.

MCDONALD, J., concurring. I concur in the result.