# STATE OF CONNECTICUT *v.* MARK ANDREWS
## (AC 29029)

Harper, Lavine and Beach, Js.

Argued March 17—officially released June 2, 2009

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Roger S. Dobris*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Mark Andrews, appeals from the judgment of conviction, rendered after a jury trial, of the crimes of attempt to commit assault in the

first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1) and attempt to commit assault of a peace officer in violation of General Statutes §§ 53a-49 (a) (2) and 53a-167c (a) (1).[1] On appeal, the defendant claims that the evidence was insufficient to support his conviction of either of those charges. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of March 16, 2006, Officers Robert Levy and Mark O'Neill of the New Haven police department were partners enforcing motor vehicle laws and patrolling the city for drivers who may have been under the influence of intoxicating liquor or drugs. Sometime between 8 and 8:30 p.m., Levy noticed two vehicles, a white Volkswagen Jetta and a blue Dodge Intrepid traveling more than sixty miles per hour through an intersection at which a speed limit of twenty-five miles per hour was posted. The defendant was operating the Intrepid without the permission of the owner, with whom the defendant was acquainted. Three of the defendant's friends occupied various passenger seats in the vehicle.

Levy and O'Neill pursued the two vehicles in their police cruiser. The Jetta turned left at an intersection, while the Intrepid continued on Long Wharf Drive. Levy and O'Neill followed the Intrepid and activated the lights and siren in their police cruiser. A nighttime road construction project was taking place on East Street, and the defendant was stopped in traffic. Levy and O'Neill were able to catch up with him. Levy drove his patrol car alongside the Intrepid and instructed the defendant to pull over. The defendant answered, "yes,

---

[1] The defendant also was convicted, following a jury trial, of assault of a peace officer in violation of General Statutes § 53a-167c (a) (1). Following a court trial, the defendant was convicted of possession of a sawed-off shotgun in violation of General Statutes § 53a-211 (a). The defendant makes no claim on appeal with respect to the conviction of those charges.

sir," and drove to the right side of the road. Levy notified police headquarters of their location. He and O'Neill got out of their patrol car.

Meanwhile, New Haven police officers Robert Hayden and Anthony Campbell were working an extra duty assignment at the intersection of Chapel Street and East Street. They observed Levy and O'Neill leave their patrol car. Hayden and Campbell approached Levy and O'Neill to assist them in the motor vehicle stop. When Levy and O'Neill approached the Intrepid, the defendant appeared nervous and had his right hand inside his coat. There was an active warrant outstanding for the defendant on a charge of escape. Additionally, he had a sawed-off shotgun inside the Intrepid. Levy told the defendant to show his hands. At this point, the defendant stepped on the accelerator and sped away. He headed directly at Hayden and Campbell, who had to jump out of the way to avoid being hit.

Levy and O'Neill returned to their patrol car and pursued the defendant. Hayden and Campbell proceeded on foot. The defendant turned left onto Wallace Street and became trapped because that street leads to a dead end. Although there were no roads leading out of Wallace Street, there was a fenced in construction site at the end of the road. The defendant turned into the construction site and forced the vehicle through a small opening leading into the site. One of the Intrepid's tires blew out in the process. Blocking any means of escape, Levy then parked his patrol car at the opening, and he and O'Neill proceeded into the construction site on foot. Looking for an exit, the defendant began driving around the construction site. Levy and O'Neill both drew their service weapons and yelled at the defendant to stop the car.

Although the construction site was fenced in completely, there was a closed gate to the construction

site located on East Street. Hayden and Campbell had proceeded on foot to the gated area of the fenced in construction site. They were both standing with weapons drawn on the sidewalk outside the gated fence and were repeatedly yelling at the defendant to stop. The Intrepid approached the gate behind which Hayden and Campbell were standing and stopped approximately twenty-five to thirty feet from the gate. The defendant flashed his high beams at Hayden and Campbell and quickly accelerated toward the gate. The Intrepid ran into the gate, which, in turn, hit Campbell, who flew into the air and landed on the street. Campbell suffered serious physical injuries as a result.

Although the gate was severely buckled and damaged as a result of the impact, it did not break apart. The defendant put the Intrepid into reverse gear and backed up so that he could make a second run at the gated portion of the fence. The defendant then drove the Intrepid directly toward the same portion of the fence. Hayden realized that if the Intrepid kept going forward in the same direction, it would run over Campbell. Hayden fired four shots at the Intrepid. The defendant then turned the Intrepid toward Hayden and drove directly at him. Although Hayden was able to get out of the way of the Intrepid before it hit him, the vehicle made contact with Hayden's service weapon.

The defendant was apprehended and charged with assault in the first degree, assault of a peace officer, attempt to commit assault in the first degree, attempt to commit assault of a peace officer and possession of a sawed-off shotgun. Before the start of trial, the defendant chose to have the charge of possession of a sawed-off shotgun tried to the court. Following a jury trial, the defendant was convicted of assault of a peace officer, attempt to commit assault in the first degree and attempt to commit assault of a peace officer. The jury was unable to agree on the charge of assault in

the first degree, and the court declared a mistrial on that charge. The court found the defendant guilty of possession of a sawed-off shotgun. The defendant was sentenced to a total effective term of forty years imprisonment. This appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth our standard of review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . We note that the [jury] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Davis*, 283 Conn. 280, 329–30, 929 A.2d 278 (2007).

I

The defendant first claims that the evidence was insufficient to support his conviction of attempt to commit assault in the first degree. The defendant argues that the state presented insufficient evidence to prove that he *intended* to cause serious physical injury to

Hayden or that he took a substantial step to commit the crime. We disagree.

General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument . . . ." General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Accordingly, "[a] conviction of attempt to commit assault in the first degree, in violation of §§ 53a-49 (a) (2) and 53a-59 (a) (1), requires proof of intentional conduct constituting a substantial step toward intentionally causing the victim serious physical injury by means of a dangerous instrument." *State* v. *Brooks*, 88 Conn. App. 204, 211–12, 868 A.2d 778, cert. denied, 273 Conn. 933, 873 A.2d 1001 (2005).

The defendant first argues that the state presented insufficient evidence to prove that he acted with the requisite intent. He states that his intent simply was to elude the police and that there is no reliable evidence to show that he maneuvered his car with the intent to cause serious physical injury to Hayden. We disagree.

"Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Internal quotation marks omitted.) *State* v. *DeJesus*, 236 Conn. 189, 197, 672 A.2d 488 (1996). "[T]he [jury is] not bound to accept as true the defendant's claim of lack of intent or his explanation of why he lacked intent." (Internal quotation marks

omitted.) *State* v. *Delgado*, 247 Conn. 616, 623–24, 725 A.2d 306 (1999). "Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation marks omitted.) *State* v. *Salaman*, 97 Conn. App. 670, 677, 905 A.2d 739, cert. denied, 280 Conn. 942, 912 A.2d 478 (2006).

The jury reasonably could have found that the state proved that the defendant drove directly at Hayden with the intent of inflicting serious injury. The jury reasonably could have found that the defendant was fully aware of Hayden's location. Hayden and Campbell were in full uniform and were wearing reflective police vests and police hats. They were both standing on the sidewalk outside the gated fence, with weapons drawn and were repeatedly yelling at the defendant to stop his vehicle. The defendant flashed his high beams at Hayden and Campbell before accelerating quickly toward the gate and hitting Campbell, thereby causing him serious physical injuries.

The jury reasonably could have found that during the defendant's second attempt to break the gate, the defendant purposefully turned the Intrepid toward Hayden with the intent to cause him serious physical injury, similar to that which he previously had inflicted on Campbell. After hitting Campbell, the defendant put the Intrepid into reverse gear and backed up so that he

could make a second run at the gated portion of the fence. The defendant initially drove the Intrepid directly toward the same portion of the fence. Hayden was in front of the Intrepid, toward the driver's side. Hayden realized that if the Intrepid kept going forward, it would run over Campbell who was lying motionless in the street. Hayden fired four shots at the Intrepid. The defendant then turned the Intrepid toward Hayden and drove directly at him. Hayden believed that the defendant deliberately was trying to run him over. Although Hayden was able to get out of the way of the Intrepid before it hit him, a portion of the vehicle touched Hayden's service weapon.

The defendant argues that when he drove directly at Hayden, his intent was not to cause serious physical injury but, rather, that his sole intent was to escape. "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports a jury's verdict of guilty." (Internal quotation marks omitted.) Id., 677–78. The existence of an intent to escape does not necessarily negate the existence of an intent to cause serious physical injury when making the escape. Under the factual circumstances of this case, it would have been reasonable to infer that the defendant intended to cause Hayden serious physical injury in an effort to facilitate his escape. See *State* v. *Hazel*, 106 Conn. App. 213, 225–27, 941 A.2d 378 (simultaneous intents not necessarily mutually exclusive), cert. denied, 287 Conn. 903, 947 A.2d 343 (2008). The evidence permits the reasonable inference that, while the defendant was attempting to escape from the fenced in construction site, he made an intentional decision to turn his vehicle in the direction of Hayden and to drive directly at him with the intent of inflicting serious physical injury.

The defendant further asserts that the state failed to prove that he had taken a substantial step in furtherance of the commission of the crime of assault in the first degree. We disagree.

Pursuant to § 53a-49 (b), "[c]onduct shall not be held to constitute a substantial step . . . unless it is strongly corroborative of the actor's criminal purpose. . . ." General Statutes § 53a-49 (b). "To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose. . . . This standard focuses on what the actor has already done and not what remains to be done. . . . The substantial step must be at least the start of a line of conduct which will lead naturally to the commission of a crime. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Morocho*, 93 Conn. App. 205, 215, 888 A.2d 164, cert. denied, 277 Conn. 915, 895 A.2d 792 (2006). "What constitutes a substantial step in any given case is a question of fact." (Citations omitted; internal quotation marks omitted.) *State* v. *Hamilton*, 30 Conn. App. 68, 80, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994).

The defendant argues that the evidence reveals that the Intrepid only brushed by Hayden and that this was insufficient to prove the substantial step necessary for attempted assault. The fact that Hayden was able to move out of the way so that the Intrepid did not hit him but, rather, made contact only with his service weapon does not mean that there was insufficient evidence to find that the defendant intended to inflict serious injury on Hayden. An "attempt is complete and punishable, when an act is done with intent to commit the crime . . . whether the purpose fails by reason of interruption . . . or for other extrinsic cause." (Internal quotation marks omitted.) *State* v. *Griffin*, 78 Conn. App. 646, 655, 828 A.2d 651 (2003). After Hayden fired shots at the Intrepid, the defendant continued to drive and redirected its path directly toward Hayden. The jury

reasonably could have concluded that such conduct constituted a substantial step that strongly corroborated the defendant's criminal purpose in attempting to hit Hayden with the Intrepid and thereby inflict serious physical injury.

## II

The defendant next claims that the evidence was insufficient to support his conviction of attempt to commit assault of a peace officer in violation of §§ 53a-49 (a) (2) and 53a-167c (a) (1). We disagree.

General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-167c provides in relevant part: "(a) A person is guilty of assault of public safety or emergency medical personnel when, with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties, (1) such person causes physical injury to such peace officer . . . ."

The defendant argues that for the state to obtain a conviction of attempt to commit assault of a peace officer in violation of §§ 53a-167c (a) (1) and 53a-49 (a) (2), there must be evidence that the defendant actually caused physical injury to the peace officer. The defendant argues that because Hayden suffered no physical injury, the evidence was insufficient to support the conviction of attempt to commit assault of a peace officer.

Our resolution of this issue is controlled by *State* v. *Jones*, 96 Conn. App. 634, 902 A.2d 17, cert. denied, 280 Conn. 919, 908 A.2d 544 (2006). In that case, a police

officer activated his vehicle's siren in pursuit of the defendant's vehicle. Id., 636. The defendant entered a parking lot, and the police cruiser blocked the defendant's only path of egress. Id., 637. The defendant continued at a high rate of speed toward the officer and caused him to turn sharply to avoid a collision. Id. The defendant claimed that he could not properly have been convicted of attempt to commit assault of a peace officer in violation of §§ 53a-167c (a) (1) and 53a-49 (a) because there was no evidence of injury to the officer. Id., 640. We held that "[t]o establish the defendant's culpability for the crime of attempted assault of a peace officer, the state needed to prove only that the defendant attempted to injure [a peace officer] with the intent to prevent him from performing his duty. The fact that the defendant did not accomplish the result, the injury to the officer, speaks to the essence of the attempt charge. Because the state was not required to prove that the officer incurred an actual injury, the defendant's claim fails." Id., 641. Accordingly, in this case the state was not required to prove that Hayden suffered an actual injury for the jury to find the defendant guilty of an attempt to commit assault of a peace officer in violation of §§ 53a-49 (a) (2) and 53a-167c (a) (1). We decline the defendant's invitation to revisit this court's decision in *State* v. *Jones*, supra, 634.

The judgment is affirmed.

In this opinion the other judges concurred.