******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* ISRAEL SANTIAGO
## (AC 42234)

Alvord, Elgo and Alexander, Js.

*Syllabus*

Convicted of various crimes in connection with his actions toward two police officers when they attempted a stop of his motor vehicle, the defendant appealed to this court. The police officers, L and M, separately responded to an early morning call regarding a suspicious individual in a silver car who appeared to be attempting to break into vehicles in a residential neighborhood. On their arrival, the officers encountered the defendant driving a vehicle matching that description and followed him, each in their own marked cruiser, down a dead end road. Near the end of the road, the defendant turned his car around. After an unsuccessful attempt to make a vehicle stop, L angled his cruiser across the road to try to prevent the defendant from leaving the area. The defendant drove over the curb and around L's vehicle. M then engaged his lights and siren and similarly angled his cruiser across the road to try and block the defendant. The defendant hit M's cruiser while attempting to drive around it. Assuming that the crash had disabled the defendant's vehicle, both L and M exited their cruisers and ordered the defendant to shut off his vehicle. Instead, the defendant reversed quickly toward L, who had to kick off the side of the defendant's car to avoid being hit by it. The defendant again advanced his car toward M, who was then standing near the back of his vehicle. The defendant briefly stopped his car between the two officers. After unsuccessfully trying to open the defendant's car door, L used the butt of his gun to break open the driver's side window of the defendant's vehicle, in an attempt to grab him. The defendant again quickly reversed and L stumbled out of the car's path. M, believing that L had been hit, fired a single shot at the defendant's vehicle in an attempt to disable it. The defendant then drove around M's cruiser and continued approximately one quarter of a mile down the road before his vehicle broke down. The defendant exited the vehicle and ran into the woods. He was apprehended shortly thereafter. Various items, which had been reported as missing from the vehicles of area residents, were recovered from the defendant's car. Although the jury found the defendant not guilty of attempt to commit assault in the first degree with respect to his actions against L, he was convicted of one count of attempt to commit assault in the first degree with respect to his actions against M, two counts of attempt to commit assault of a peace officer with respect to his actions against L and M, respectively, and one count of engaging an officer in pursuit. On appeal, the defendant claimed that there was insufficient evidence to support his conviction of attempt to commit assault in the first degree and that the trial court erred in accepting the jury's verdict of guilty of attempt to commit assault of a peace officer because that crime was not legally cognizable or, in the alternative, because the evidence was insufficient to support his conviction of both counts. *Held*:

1. The evidence was sufficient to support the defendant's conviction of attempt to commit assault in the first degree: there was ample evidence from which the jury reasonably could have found, by the cumulative impact of the evidence and the rational inferences permissibly drawn therefrom, that the defendant's intent was proven beyond a reasonable doubt, as the jury reasonably could have found that the defendant was aware of M's presence and location, that he intended to hit M with his car, that he had a motive to assault M, as the defendant's car had several stolen items in it that evening, many plainly visible, and that he did not mistakenly accelerate toward M.

2. The trial court did not err in accepting the jury's verdict of guilty of two counts of attempt to commit assault of a peace officer: the defendant's claim that the crime was not legally cognizable was unpreserved because he failed to raise it at trial; moreover, the claim failed under the third prong of *State* v. *Golding* (213 Conn. 233), because the defendant failed to establish that there was a constitutional violation, as this court had

previously determined in *State* v. *Jones* (96 Conn. App. 634), that attempt to commit assault of a peace officer was a legally cognizable crime; furthermore, the defendant's claim that there was insufficient evidence of the requisite intent to support his conviction pertaining to his actions against M failed because the jury reasonably could have found that the defendant intended to cause serious physical injury to M, which would be sufficient to support a finding that the defendant acted with an intent to prevent M from performing his duties; additionally, the defendant abandoned his claim that there was insufficient evidence of the requisite intent to support his conviction pertaining to his actions against L because his briefing was devoid of any analysis to support his claim, merely incorporating his arguments set forth with respect to his challenge to his conviction of attempt to commit assault in the first degree, which related only to his actions against M, and, accordingly, this court declined to review the claim.

Argued February 17—officially released August 3, 2021

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of attempt to commit assault in the first degree and attempt to commit assault of a peace officer, and with one count of the crime of engaging an officer in pursuit, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, and tried to the jury before *B. Fischer*, *J.*; verdict and judgment of guilty of one count of attempt to commit assault in the first degree, two counts of attempt to commit assault of a peace officer and one count of engaging an officer in pursuit, from which the defendant appealed to this court. *Affirmed.*

*Megan L. Wade*, assigned counsel, with whom was *Emily Graner Sexton*, assigned counsel, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Karen Roberg*, assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Israel Santiago, appeals from the judgment of conviction, rendered after a jury trial, of one count of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1) and two counts of attempt to commit assault of a peace officer in violation of General Statutes §§ 53a-49 (a) (2) and 53a-167c (a) (1).[1] On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction of attempt to commit assault in the first degree and (2) the crime of attempt to commit assault of a peace officer is not legally cognizable and, alternatively, the evidence was insufficient to support his conviction of both counts of attempt to commit assault of a peace officer. We affirm the judgment of the trial court.

The following facts, which reasonably could have been found by the jury, and procedural history are relevant to this appeal. On the afternoon of November 8, 2014,[2] the defendant purchased a bottle of brandy and met his friend, Anthony Tuozzola,[3] to purchase and use heroin. Thereafter, the defendant and Tuozzola drove to Waterbury. Throughout the afternoon and evening, the two men continued to drink.[4] At around 10 o'clock in the evening, the defendant and Tuozzola drove to a bar in downtown New Haven. At around midnight, after he had consumed four or five alcoholic beverages at the bar, the defendant and Tuozzola drove to North Branford.[5] On the way, the defendant "took a wrong turn" and ended up stopping the car on the side of Seahill Road in North Branford.

A resident of Seahill Road, Christopher Hills, testified that, after the defendant and Tuozzola stopped their car on the side of the road,[6] he observed the defendant[7] attempt to break into a car that was parked in his driveway. Specifically, Hills testified that, just after midnight, he heard a car park on the street outside his home and he went to his window to see what was happening. Hills observed a silver car parked on the road outside his house; he watched the defendant enter his driveway, approach his wife's car, which was parked in the driveway, and attempt to open the door to his wife's car. Thereafter, Hills called the police.

Officers Corey Lemmons and Christopher Miserendino of the North Branford Police Department responded separately to Hills' call. While Officer Lemmons drove through the neighborhood looking for the car that Hills described, Officer Miserendino responded to Hills' address at 410 Seahill Road.[8] On arriving, Officer Miserendino met Hills in the driveway; moments after he arrived, Hills alerted the officer that the silver car that he had observed earlier was driving by his residence on Seahill Road again. Officer Miserendino then returned to his cruiser to catch up to the silver car.

Shortly thereafter, Officer Miserendino spotted Officer Lemmons' police cruiser following the silver car. The silver car headed down Seahill Road, toward a dead end, followed first by Officer Lemmons and then by Officer Miserendino. Shortly after Officer Miserendino spotted Officer Lemmons, Officer Lemmons engaged his police lights.[9] Just before the trio reached the dead end, the silver car began turning away from the dead end. Officer Lemmons attempted to make a vehicle stop, but he was unsuccessful. In a further attempt to stop the silver car, Officer Lemmons turned his cruiser at an angle across the road, attempting to block the silver car's path. Instead of pulling over or stopping, the silver car "popped the curb" in front of Officer Lemmons' cruiser and went around the cruiser.

Seeing the silver car maneuver around Officer Lemmons' cruiser, Officer Miserendino engaged his lights and siren and angled his cruiser across both lanes of the road in another attempt to stop the silver car. Again, the silver car did not stop; rather, the driver attempted to drive around Officer Miserendino's cruiser, only to collide with the passenger side rear of the cruiser, causing damage. On observing the collision and assuming that both cars were disabled, Officer Lemmons exited his cruiser and ran up Seahill Road toward Officer Miserendino's cruiser and the silver car.[10]

Officer Miserendino similarly assumed that the collision disabled the silver car and would allow him to take the driver into custody. Officer Miserendino exited his cruiser, drew his firearm, and ordered the driver to shut off the silver car's engine and to show his hands. The defendant did not comply. At this point, Officer Miserendino was standing so that his cruiser was between him and the silver car and it was at this time when the officer first observed the driver of the silver car, who he later identified as the defendant, and his passenger. Officer Miserendino observed that the passenger looked scared and that the defendant seemed to have no expression at all.

Officer Miserendino repeated his orders for the defendant to shut off the silver car's engine and show his hands. Again, the defendant failed to comply with the orders and, "without warning," the car began to reverse quickly toward the area where Officer Lemmons stood.[11] In order to avoid being hit, Officer Lemmons had to kick off the side of the silver car and push himself to safety.

Despite already attempting to escape around the rear of Officer Miserendino's cruiser, the defendant again proceeded to drive the silver car toward the rear of Officer Miserendino's cruiser, where Officer Miserendino stood.[12] At this point, Officer Miserendino's cruiser was no longer between Officer Miserendino and the silver car, and he had to evade the silver car in order to avoid being hit. Then, the silver car came to a stop

and, for a moment, it remained somewhat stationary[13] between the two officers and the two police cruisers.

Because the defendant had continued to ignore all orders, Officer Lemmons attempted to open the driver's side door of the silver car to apprehend the defendant. The car door was locked, however, so Officer Lemmons instead used the butt of his service weapon to break open the driver's side window of the silver car. After Officer Lemmons broke the window, the vehicle "was moving a lot forward and backwards, which looked very . . . menacing and aggressive . . . ."[14] Officer Lemmons had intended to reach through the broken window and grab the defendant,[15] but the defendant quickly reversed the silver car, and Officer Lemmons had to evade its path, stumbling as he did so.

Officer Miserendino testified that, after seeing those events transpire, he thought that Officer Lemmons had been hit by the silver car and that he was in fear for both of their lives. Specifically, Officer Miserendino testified that he felt that the defendant was using the silver car as a weapon against himself and Officer Lemmons. Officer Miserendino fired a single shot from his service weapon at the silver car, with the intent to disable it. The shot, however, did not disable the vehicle, and the defendant proceeded to drive around the front of Officer Miserendino's cruiser and up Seahill Road.[16] After checking on Officer Lemmons, Officer Miserendino returned to his cruiser and attempted to catch up to the silver car. Officer Lemmons followed in pursuit.

The defendant drove about one-quarter of a mile down the road before the silver car broke down on the side of the road. The defendant then exited the silver car and ran into woods nearby. In order to locate the defendant, the officers requested K-9 services from the North Haven Police Department. Thereafter, with the assistance of Canine Officer Zeus and Officer James Brennan, law enforcement apprehended the defendant and he was taken into custody.

Detective Sergeant Sean Anderson responded to the location where the defendant had abandoned the silver car. Later that week, Detective Sergeant Anderson applied for and subsequently obtained a search and seizure warrant to inspect the inside of the silver car. Inside the vehicle, Detective Sergeant Anderson found a debit card with the name Maria Liguori, hotel room key cards, several sets of curtains, a pocket radar, a pink iPod, and a black leather case. A Rolex watch was also recovered.

Thereafter, Hills discovered that several items were missing from his wife's car and reported that these items had been in the vehicle the previous day. Specifically, he discovered that a pocket radar, a watch, and a black leather case were missing. Hills reported the missing items to the North Branford police. Similarly, Maria

Gallicchio (formerly Maria Liguori), also a resident of North Branford, discovered that items were missing from her car. Specifically, she discovered that an iPod, her debit card, a hotel room key card, hotel vouchers, and several sets of curtains were missing and reported that all of these items had been in her car the day before. Gallicchio reported the missing items to the North Branford police. At trial, both Gallicchio and Hills identified the items seized from the silver car as the missing items that had been taken from their vehicles.

The defendant was charged with five counts by way of an amended long form information dated March 27, 2018. In the first and second counts, the defendant was charged with attempt to commit assault in the first degree in violation of §§ 53a-49 (a) (2) and 53a-59 (a) (1). Count one was related to his reversing the silver car toward Officer Lemmons and count two was related to his accelerating toward Officer Miserendino. In the third and fourth counts, the defendant was charged with attempt to commit assault of a peace officer in violation of §§ 53a-49 (a) (2) and 53a-167c (a) (1), relating to Officers Lemmons and Miserendino, respectively. In the fifth count, the defendant was charged with engaging an officer in pursuit in violation of General Statutes § 14-223 (b).

A trial was held on April 2 and 3, 2018. The state presented the testimony of Hills, Officer Miserendino, Officer Ron Ferrucci, Gallicchio, Officer Lemmons, Detective Sergeant Anderson, Officer Brennan, Officer Pasquale Marino, Officer Joseph Venditto, and Officer Michael Doherty.[17] The defendant testified in his own defense. After the prosecution rested, the defendant moved for judgment of acquittal, which the trial court denied.[18]

The jury found the defendant not guilty of count one, attempt to commit assault in the first degree pertaining to his actions against Officer Lemmons, but it found the defendant guilty of counts two through five. Thereafter, the court sentenced the defendant to twenty years of incarceration, execution suspended after fifteen years, followed by five years of probation, for count two, five years of incarceration for counts three and four, and one year of incarceration for count five, to run concurrently. This appeal followed.

I

The defendant's first claim on appeal is that there was insufficient evidence to support his conviction of attempt to commit assault in the first degree pertaining to his actions against Officer Miserendino. Specifically, the defendant asserts that the evidence was insufficient to establish beyond a reasonable doubt that he possessed the necessary intent to be convicted of this crime. For the reasons that follow, the defendant cannot prevail on his sufficiency of the evidence claim.

Before addressing the defendant's first claim on appeal, we set forth the well established principles that guide our review. "[A] defendant who asserts an insufficiency of the evidence claim bears an arduous burden. . . . [F]or the purposes of sufficiency review . . . we review the sufficiency of the evidence as the case was tried . . . . [A] claim of insufficiency of the evidence must be tested by reviewing no less than, and no more than, the evidence introduced at trial. . . . In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Luciano*, 204 Conn. App. 388, 396, A.3d , cert. denied, 337 Conn. 903, A.3d (2021).

"In evaluating a claim of evidentiary insufficiency, we review the evidence and construe it as favorably as possible with a view toward sustaining the conviction, and then . . . determine whether, in light of the evidence, the trier of fact could reasonably have reached the conclusion it did reach. . . . A trier of fact is permitted to make reasonable conclusions by draw[ing] whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . [These inferences, however] cannot be based on possibilities, surmise or conjecture. . . .

"We note that the [trier of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Josephs*, 328 Conn. 21, 35–36, 176 A.3d 542 (2018).

In order to sustain the defendant's conviction, the state must have presented evidence from which the jury reasonably could have found beyond a reasonable doubt that the defendant was guilty of attempt to commit assault in the first degree against Officer Miserendino. Pursuant to § 53a-49 (a), "[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything

which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Further, "[a] person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ." General Statutes § 53a-59 (a). "Accordingly, [a] conviction of attempt to commit assault in the first degree, in violation of §§ 53a-49 (a) (2) and 53a-59 (a) (1), requires proof of intentional conduct constituting a substantial step toward intentionally causing the victim serious physical injury by means of a dangerous instrument." (Internal quotation marks omitted.) *State* v. *Andrews*, 114 Conn. App. 738, 744, 971 A.2d 63, cert. denied, 293 Conn. 901, 975 A.2d 1277 (2009).

General Statutes § 53a-3 (11) provides in relevant part that "[a] person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ." "Intent may be, and usually is, inferred from [a] defendant's verbal or physical conduct [as well as] the surrounding circumstances. . . . Nonetheless, [t]here is no distinction between circumstantial and direct evidence so far as probative force is concerned. . . . Moreover, [i]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . Finally, we underscore that intent [can] be formed instantaneously and [does] not require any specific period of time for thought or premeditation for its formation. . . . Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Citations omitted; internal quotation marks omitted.) *State* v. *Carter*, 317 Conn. 845, 856–57, 120 A.3d 1229 (2015).

Additionally, "[t]he [jury is] not bound to accept as true the defendant's claim of lack of intent or his explanation of why he lacked intent. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as the type of weapon used, [and] the manner in which it was used . . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Citation omitted; internal quotation marks omitted.) *State* v. *Andrews*, supra, 114 Conn. App. 744–45. Further "[t]he existence of an intent to escape does not necessarily negate the existence of an intent to cause

serious physical injury when making the escape." Id., 746.

On appeal, the defendant argues that "[n]o evidence was presented to prove beyond a reasonable doubt that the defendant acted with the specific intent to cause serious physical injury to Officer Miserendino" and that, therefore, "the evidence was insufficient to sustain a conviction of [attempt to commit] assault in the first degree . . . ." The defendant asserts that "the evidence adduced at trial demonstrated that [he] did not intend to cause serious physical injury, but rather acted with the intent to flee from the police." We are not persuaded.

In support of his argument that his only intent was to evade the officers, the defendant relies on Officer Miserendino's testimony that the defendant's actions were "reckless" and "evasive" and argues that this testimony is dispositive on the question of intent. The relevant testimony comes from the following colloquy between Officer Miserendino and defense counsel:

"[Defense Counsel]: Why did you think your life was in danger?

"[Officer Miserendino]: Well, the reckless operation of a vehicle; it had already struck a police cruiser, it had reversed and almost ran over Officer Lemmons, we're yelling commands to continuously stop, the car is not stopping, the vehicle again, for the second time, almost strikes Officer Lemmons. The vehicle was being used as a weapon. . . .

"[Defense Counsel]: You just said that the vehicle was operating recklessly?

"[Officer Miserendino]: Yes.

"[Defense Counsel]: And it was going—recklessly was in the action of reversing and then moving forward?

"[Officer Miserendino]: I'm not sure what you're asking.

"[Defense Counsel]: Well, I mean, your testimony is that he strikes your vehicle, doesn't stop—or, I mean, doesn't continue going and just reverses, goes forward, reverses again and then eventually he gets around your cruiser?

"[Officer Miserendino]: Yeah.

"[Defense Counsel]: Okay. So, that action there, reversing and going forward that—that was reckless?

"[Officer Miserendino]: Striking a police vehicle that's trying to stop you, almost running over an officer, yes."

On the basis of this testimony, the defendant argues that the officer "did not believe the defendant's actions were to intentionally cause serious physical injury, but rather, to escape," and, therefore, the evidence is insufficient to support the conviction. The defendant relies on *Andrews*, in which this court found sufficient evi-

dence of intent to support a conviction of attempt to commit assault in the first degree where a defendant drove toward an officer while trying to flee and the officer testified that he "believed that the defendant deliberately was trying to run him over." *State* v. *Andrews*, supra, 114 Conn. App. 744, 746. The defendant contends that, because, unlike in *Andrews*, Officer Miserendino "did not testify that he believed that the defendant was 'deliberately' trying to run him over," there is insufficient evidence to support his conviction. The defendant neglects to mention Officer Miserendino's testimony that he believed the defendant was using his car as a weapon to injure himself and Officer Lemmons. Thus, the defendant's argument is unavailing.

In the present case, there is ample evidence from which the jury reasonably could have concluded beyond a reasonable doubt that the defendant had the intent to inflict serious physical injury on Officer Miserendino.[19] First, the jury reasonably could have found that the defendant was aware of Officer Miserendino's presence and location. The defendant's actions at issue occurred after the defendant had collided with Officer Miserendino's cruiser, and, therefore, there was evidence to reasonably support a finding that the defendant knew the location of the cruiser. Further, Officer Miserendino testified that, moments earlier, he was close enough to the defendant to observe his facial expression and later identify him. Officer Miserendino did not move away from the cruiser. Additionally, both officers had their police lights activated, illuminating the scene, and both officers were shouting commands at the defendant throughout the incident. The jury reasonably could find that the defendant knew where Officer Miserendino was and that the defendant drove the silver car directly toward Officer Miserendino.

Second, the jury reasonably could have found that the defendant intended to hit Officer Miserendino with the silver car. Officer Lemmons testified that, earlier in the pursuit, the defendant attempted to drive around Officer Miserendino's cruiser, but he failed and collided with the passenger side rear of the cruiser. Thereafter, Officer Miserendino exited his cruiser and began shouting orders to the defendant from the driver's side rear of his cruiser. Officer Lemmons testified that "it appeared that [the defendant] was trying to go around [Officer Miserendino's cruiser] again" by proceeding along the same route that previously resulted in a collision with the passenger side rear of the cruiser. During this attempt, however, Officer Miserendino was now outside his cruiser and standing between his cruiser and the silver car driven by the defendant, and he had to evade the silver car in order to avoid being hit. Accordingly, the jury reasonably could have found that the defendant intended to hit Officer Miserendino.[20]

Third, the jury reasonably could have found that the

defendant had a motive to assault Officer Miserendino. The state presented evidence to support a finding that the defendant had a motive to evade the officers by any means. Specifically, the state presented evidence that the silver car had several stolen items in it that evening, many of which were plainly visible.[21] The jury reasonably could have found, consistent with the state's closing arguments, that the defendant had a motive to evade the police by whatever means necessary, including by assaulting Officer Miserendino.

Fourth, the jury reasonably could have found that the defendant did not mistakenly accelerate toward Officer Miserendino. The state presented evidence that tends to demonstrate the defendant's lack of mistake in regard to his acceleration toward Officer Miserendino. Specifically, the state presented evidence of a subsequent encounter between the defendant and several police officers on September 7, 2015. See footnote 17 of this opinion. This evidence provides a pattern of behavior that reasonably could support a conclusion by the jury that the defendant did not accelerate toward Officer Miserendino due to a mistake. See, e.g., Conn. Code Evid. § 4-5 (c) ("[e]vidence of other crimes, wrongs or acts . . . is admissible . . . to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony"); *State* v. *Collins*, 299 Conn. 567, 583, 10 A.3d 1005 (same), cert. denied, 565 U.S. 908, 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011).

In the present case, the jury reasonably could have found that the defendant's intent, as an element of the crime of attempt to commit assault in the first degree, was proven beyond a reasonable doubt by the cumulative impact of the evidence and the rational inferences permissibly drawn therefrom. Accordingly, the defendant cannot prevail on this claim.[22]

## II

The defendant's second claim on appeal is that the trial court erred in accepting the jury's verdict for the counts of attempt to commit assault of a peace officer because that crime is not legally cognizable. We conclude that the defendant's claim fails under the third prong of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 780–81, 120 A.3d 1188 (2015). In the alternative, the defendant claims that the evidence was insufficient to support his conviction of two counts of attempt to commit assault of a peace officer.[23] For the reasons set forth in part I of this opinion, the defendant's challenge to his conviction of the count pertaining to his actions against Officer Miserendino fails. See footnote 22 of this opinion. With respect to the defendant's challenge to his conviction of the count pertaining to his actions

against Officer Lemmons, we do not reach the merits of the claim.

A

We first turn to the claim that the crime of attempt to commit assault of a peace officer is not legally cognizable. The defendant seeks review of this unpreserved claim under *State* v. *Golding*, supra, 213 Conn. 233, as modified by *In re Yasiel R.*, supra, 317 Conn. 780–81. We conclude that the defendant's claim fails under the third prong of *Golding* because he has not established a constitutional violation.

The following procedural history is relevant to our resolution of this claim. This appeal was fully briefed on August 31, 2020. On August 20, 2020, the defendant filed a motion to transfer the appeal to our Supreme Court. In the motion to transfer, the defendant argued that transfer was warranted in order to resolve a tension between a Supreme Court case and an Appellate Court case. Specifically, the defendant asserted that *State* v. *Jones*, 96 Conn. App. 634, 902 A.2d 17, cert. denied, 280 Conn. 919, 908 A.2d 544 (2006), is inconsistent with Supreme Court precedent, namely, *State* v. *Almeda*, 189 Conn. 303, 455 A.2d 1326 (1983), and should be overruled. Although the defendant acknowledged that his claim is controlled by *Jones*, because that case can be overruled only by the Supreme Court or the Appellate Court sitting en banc, he requested transfer, claiming that *Jones* was incorrectly decided and should be overruled. Our Supreme Court denied the motion.

On December 4, 2020, the defendant filed a motion with this court requesting en banc consideration. Again, the defendant argued that *Jones* was incorrectly decided in light of *Almeda*, and should be overruled. This court denied the motion.

First, we must address whether this claim is reviewable. In his principal appellate brief, the defendant, for the first time, raises the question of whether the crime of attempt to commit assault of a peace officer is a legally cognizable crime. The defendant acknowledges that this claim was not raised at the trial level and, accordingly, is unpreserved. The defendant argues, however, that this claim is reviewable under the principles set forth in *State* v. *Golding*, supra, 213 Conn. 233.

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote

omitted.) Id., 239–40; see also *In re Yasiel R.*, supra, 317 Conn. 780–81 (modifying third prong of *Golding*).

"[T]he third prong of *Golding* does not require that there be existing Connecticut precedent already recognizing a constitutional right. Instead, a party satisfies the third prong of *Golding* if he or she makes a showing sufficient to establish a constitutional violation. Requiring anything more would defeat the purpose of *Golding*, which, of course, is to permit a party to prevail on an unpreserved constitutional claim when, on appeal, the party can demonstrate a harmful constitutional deprivation." *In re Yasiel R.*, supra, 317 Conn. 780–81. "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *LaFontaine*, 128 Conn. App. 546, 550 n.3, 16 A.3d 1281 (2011).

Assuming, without deciding, that the defendant's claim is reviewable under the first two prongs of *Golding*, it fails the under the third prong. In *State* v. *Jones*, supra, 96 Conn. App. 640, this court determined that the crime of attempt to commit assault of a peace officer is legally cognizable. Because the defendant's argument with respect to prong three is predicated on his claim that attempt to commit assault of a peace officer is not a legally cognizable crime, and because this court in *Jones* previously determined that the crime *is* legally cognizable, there cannot be a clear constitutional violation for the purposes of *Golding*. In light of *Jones*, the defendant's claim fails under the third prong of *Golding*.[24]

### B

The defendant claims, alternatively, that there was insufficient evidence of the requisite intent to support his conviction of attempt to commit assault of a peace officer pertaining to his actions against Officer Lemmons. We conclude that the defendant has abandoned this claim.

"It is well settled that claims on appeal must be adequately briefed . . . . Claims that are inadequately briefed generally are considered abandoned." (Citations omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004). "The mere recital of . . . claims in a petition, without supporting oral or written argument, does not adequately place those claims before the court for its consideration." *Solek* v. *Commissioner of Correction*, 107 Conn. App. 473, 480–81, 946 A.2d 239, cert. denied, 289 Conn.

902, 957 A.2d 873 (2008).

The defendant's briefing is devoid of any analysis in support of his challenge to his conviction of attempt to commit assault of a peace officer pertaining to his actions against Officer Lemmons. In support of his claim, the defendant merely incorporated his arguments previously set forth with respect to his challenge to his conviction of attempt to commit assault in the first degree.[25] Those arguments, however, relate *only* to the defendant's actions against Officer Miserendino. Accordingly, the defendant provides no supporting factual argument or legal analysis that challenges his conviction pertaining to his actions against Officer Lemmons. For these reasons, we conclude that the defendant's claim is abandoned. We, therefore, decline to review it.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant also was convicted of one count of engaging an officer in pursuit in violation of General Statutes § 14-223 (b). The defendant does not challenge his conviction of this offense on appeal.

The defendant also was charged with one count of attempt to commit assault in the first degree pertaining to his actions against Officer Corey Lemmons of the North Branford Police Department. The jury found him not guilty of that charge.

[2] The defendant ultimately was detained in the early hours of November 9, 2014.

[3] We note that Anthony Tuozzola's name is spelled inconsistently throughout the record. For purposes of clarity, we refer to him as Tuozzola.

[4] By the time the defendant and Tuozzola drove to Waterbury, the defendant had various intoxicating drugs in his system. At the start of his day, the defendant was provided methadone through a local program. In addition, the defendant took eight milligrams of prescribed Xanax. Although the defendant testified that he was "messed up that night," he also testified that he would generally ingest methadone, Xanax, and alcohol every day. He additionally testified that, in the hours leading up to his arrest, he had no issues driving to Waterbury, from Waterbury to New Haven, or from New Haven to North Branford.

[5] The defendant testified that they drove to North Branford to visit their friend.

[6] According to the defendant, he and Tuozzola stopped to urinate. The defendant testified that, after relieving themselves, he and Tuozzola returned to the car and drove away, only to find themselves at a dead end where they encountered two police cruisers.

[7] At trial, Hills was not asked to identify the person he saw in his driveway in the early morning hours of November 9, 2014; however, he did identify the silver car that later drove by his house as the vehicle driven by the person he saw in his driveway, and he stated that the person had entered the silver car via the driver's side door. Officers Christopher Miserendino and Corey Lemmons identified the defendant as the person driving the silver car that night. Further, the defendant testified that he was driving the silver car at all times that night.

[8] Although Hills' address is 410 Seahill Road, his driveway opens onto Wilford Road, which, at that location, runs perpendicular to Seahill Road.

[9] Officer Miserendino testified that Officer Lemmons also had his siren on; however, Officer Lemmons testified that he did not turn his siren on until sometime later. Further, the defendant testified that the first car (Officer Lemmons' cruiser) did not have its lights on.

[10] Additionally, given the narrowness of the road, Officer Lemmons was having trouble turning around and determined that proceeding on foot would be better.

[11] Officer Lemmons testified that he did not think that the driver was aware of his presence behind the silver car.

[12] Officer Lemmons testified that the defendant seemed again to attempt

to maneuver around Officer Miserendino's cruiser.

[13] Officer Miserendino testified that the car "came forward towards me . . . [and] reversed again and kind of, for a short amount of time, stayed stationary." Officer Lemmons testified that the silver car was "moving a little bit back and forth, back and forth . . . ."

[14] Officer Lemmons testified that, in retrospect, he thought the vehicle was moving that way because the defendant was trying not to stall the vehicle. The silver car was a standard transmission.

[15] Officer Lemmons testified that, after he broke the window of the silver car, he first observed the driver, who he later identified as the defendant.

[16] The defendant's account of the interaction is quite different. He testified that when he initially went to drive around Officer Miserendino's cruiser, the officer hit the defendant's car with the cruiser and that, despite the collision, the defendant was able to drive around the cruiser and up Seahill Road. He testified that he "never reversed" the silver car and that he did not remember the window breaking, but he did remember hearing "gun shots [and] glass breaking . . . ."

[17] Officers Venditto and Doherty testified about an incident that occurred in Hamden on September 7, 2015, about one year after the incident at issue in the present case. At around six o'clock that evening, Officers Venditto and Doherty received a report of an erratic vehicle and then observed a vehicle that matched the description. Officer Venditto attempted a traffic stop and initially was successful; however, as soon as he began to exit his cruiser, the vehicle sped off. Officer Venditto, along with Officer Doherty who had arrived at the scene, then pursued the driver for some time. Near the end of the pursuit, the driver hit Officer Doherty's cruiser, disabling it. Assuming that the driver's vehicle was also disabled, Officer Doherty exited his cruiser. The vehicle, however, drove away before turning around and driving directly at Officer Doherty. Officer Doherty testified that he "believed [the driver] was traveling at [him] personally." Fearing for his safety, Officer Doherty fired three shots at the vehicle, which swerved away from the officer at the last moment. The driver eventually abandoned the vehicle and fled. He was apprehended and taken into custody shortly thereafter. Both Officer Venditto and Officer Doherty identified the defendant as the driver of the car involved in the September 7, 2015 incident.

[18] As to each count alleging criminal attempt, the defendant argued that, because of his intoxication, he could not form the specific intent required for the crime.

[19] During its closing argument, the state argued that the substantial step in relation to the defendant's attempt to injure Officer Miserendino was the second time that the defendant accelerated toward the officer—when Officer Miserendino was standing outside of his cruiser after the silver car had collided with it. Thus, our discussion of intent focuses on this specific moment.

[20] In its brief, the state addressed Officer Lemmons' testimony that the defendant just seemed to be trying to get around Officer Miserendino's cruiser. The state offered several plausible ways the jury could have viewed this evidence: the jury could have determined that this opinion was due to Officer Lemmons' different perspective of the scene, it could have determined that the defendant formed the necessary intent after his initial attempt to get around the vehicle, or it could have decided to disregard Officer Lemmons' testimony on the fact. Further, the state noted the testimony regarding the September 7, 2015 incident; see footnote 17 of this opinion; bolstered the conclusion that the defendant had the requisite intent.

[21] Detective Sergeant Anderson, who searched the silver car, found the stolen items in the vehicle's center console, on the backseat, and on the floor of the backseat.

[22] The defendant also claims, in the alternative to his claim that attempt to commit assault of a peace officer is not a legally cognizable crime, that there was insufficient evidence of the requisite intent to support his conviction of attempt to commit assault of a peace officer as to his actions against Officer Miserendino. See part II of this opinion. In *State* v. *Jones*, 96 Conn. App. 634, 639, 902 A.2d 17, cert. denied, 280 Conn. 919, 908 A.2d 544 (2006), this court determined that "when coupled with the attempt statute, the intent required for the crime of attempted assault of a peace officer is the intent to prevent the officer from performing his duties." In part I of this opinion, we have concluded that, on the basis of the evidence presented and the rational inferences drawn therefrom, the jury reasonably could have found that the defendant intended to cause serious physical injury to Officer Miserendino. Because harming an officer would necessarily

result in preventing that officer from performing his/her duties, we also conclude that this same evidence that is sufficient to support a finding that the defendant intended to harm Officer Miserendino reasonably could support a finding that the defendant acted with the intent to prevent Officer Miserendino from performing his duties. Accordingly, the defendant's claim that there is insufficient evidence of the requisite intent to support his conviction for attempt to commit assault of a peace officer as to his actions against Officer Miserendino fails.

[23] As previously mentioned in this opinion, the defendant was convicted of one count of attempt to commit assault of a peace officer pertaining to his actions against Officer Lemmons and one count pertaining to his actions against Officer Miserendino.

[24] Because this court in *Jones* determined that the crime at issue is legally cognizable; *State* v. *Jones*, supra, 96 Conn. App. 640; we need not consider whether a nonlegally cognizable crime satisfies *Golding*'s requirement of a clear constitutional violation. In his principal appellate brief, the defendant urges us to overrule *Jones*, arguing that it was decided incorrectly. This panel does not reach the merits of the defendant's argument, as "[i]t is this court's policy that we cannot overrule a decision made by another panel of this court absent en banc consideration." (Internal quotation marks omitted.) *State* v. *Bischoff*, 189 Conn. App. 119, 123, 206 A.3d 253 (2019), aff'd, Conn. , A.3d (2021). Because we are not reviewing the present case en banc, we are bound by our decision in *Jones*.

[25] Specifically, the defendant argues that because there was insufficient evidence to prove his intent to cause serious physical injury to Officer Miserendino, "it logically follows that [he] necessarily was convicted of [attempt to commit] assault of police officers based on a theory of reckless or negligent actions . . . ." The defendant further maintains that, in light of his insistence that the jury must have convicted him of attempt to commit assault in the first degree on the basis of a theory of reckless or negligent actions, rather than on his specific intent to cause serious physical injury, "and because a defendant cannot attempt to commit an offense that requires an unintended result, the defendant's [conviction] of attempt to commit assault of a [peace] officer must be set aside."

───────────────────────